UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                :

**MOHAMMED RAHMAN**,

               Plaintiff,

         – against –

**PAPA JOHNS INTERNATIONAL, INC., PJ
NATIONAL NEW YORK, LLC**, and **PJ
ELHURST, INC.**,

              Defendants.

------------------------------------------------------------------ X

**MEMORANDUM DECISION AND
ORDER**

22-CV-5644 (AMD) (TAM)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against defendants Papa Johns International, Inc., PJ

National New York, LLC, and PJ Elhurst, Inc., under the Fair Labor Standards Act ("FLSA")

and the New York Labor Law ("NYLL").  The plaintiff alleges that the defendants regularly

required him to work (i) without receiving minimum wages for all hours worked, (ii) without

time allowed for meals, and (iii) for more than 40 hours a week without overtime compensation.

Before the Court is PJ National's motion to compel arbitration.  For the reasons explained

below, the defendant's motion is granted.  The action is stayed pending arbitration of the

plaintiff's claims.

## BACKGROUND

**I.     Factual Background**

The following facts are drawn from the complaint, exhibits and declarations submitted in

this case and the evidence presented at the evidentiary hearing.[1]

---

[1] The Court considers documents outside of the pleadings, including documents attached to the parties'
motion briefs, for purposes of deciding a motion to compel arbitration.  *See Faggiano v. CVS Pharm.,
Inc.*, 283 F. Supp. 3d 33, 34 n.1 (E.D.N.Y. 2017) ("While it is generally improper to consider documents

PJ National operates Papa John's pizza franchise locations, including a store located at 90-35 Corona Avenue, Queens, New York.  (ECF No. 28 ¶¶ 2–3.)  The defendant hired the plaintiff on November 3, 2017 to be a delivery driver for that Papa John's location.  (*Id.* ¶¶ 4–5.)  On the day he was hired, the plaintiff completed "onboarding documents" with Iqbal Hussain, the general manager of the Queens store.  (*Id.* ¶¶ 3, 10.)  The plaintiff says that he spoke to Hussain in Bangla and English.  (ECF No. 29-2 ¶ 19.)

Included in the documents was an arbitration agreement, which the plaintiff signed. (ECF No. 28-2 at 9–11 (signed arbitration agreement).)  The arbitration agreement provides that "all 'covered claims' that [the plaintiff] may have against [the defendant] . . . shall be submitted exclusively to and determined exclusively by binding arbitration in New York, New York under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*."  (*Id*.)  The agreement also provides that "[i]f a party files a lawsuit in court to resolve covered claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through arbitration as required by this Agreement."  (*Id.*)  The agreement defines "covered claims" as

> all claims that may arise as a result of the services Employee provides at Employer . . . and/or related to Employee's compensation for the services Employee performs at Employer, and specifically including any claim or cause of action alleging Employee is an employee of Employer and/or was improperly or insufficiently paid wages under the Fair Labor Standards Act ("FLSA") or any state or local wage and hour law, regardless of whether the covered claims arose or accrued prior or subsequent to Employee entering into this Agreement.

(*Id.*)

---

not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006))).

Some of the plaintiff's onboarding documents were incomplete, and in some cases, the plaintiff signed them, but another employee filled them in. (*See* ECF No. 29-2 ¶¶ 13, 17–18.) The plaintiff asserts that he filled out only one form by himself—the USCIS Form I-9, Employment Eligibility Verification. (*Id.* ¶ 11.) The plaintiff misspelled "driver's license" as "DRIVR LICESE " on that form. (*See* ECF No. 28-2 at 3 (I-9 Form).) Another form entitled "Employee Acknowledgement" lists the plaintiff's primary language as Bangla; in addition, someone wrote "I have read and understand the Company's Policies in their entirety. I do not need a translator, or to extent I need a translator, the Policies were translated to me." (*Id.* at 6 (Employee Acknowledgment).) The plaintiff states he did not write this acknowledgement, the handwriting is not his, and he did not know enough English to have written it. (*See* ECF No. 29-2 ¶ 16.)

In "early 2018," PJ National transitioned its employees, including the plaintiff, to an online employee portal called "ADP." (ECF No. 27 ¶ 7.) As part of this process, the plaintiff created login credentials so that he could access to his paystubs, direct deposit information, and the employee handbook. (*Id.* ¶¶ 7–8.)[2] ADP sends registered employees push notifications if there is a new document or policy that the employee must acknowledge and to which he must agree. (*Id.* ¶ 9.) Records reflect that the plaintiff acknowledged and accepted the arbitration agreement two times in the ADP portal—on April 24, 2018 and on December 17, 2020. (*Id.* ¶¶ 12, 13.) The plaintiff disputes this. He claims that another employee, Majhurul Meah, set up the plaintiff's ADP portal account and login credentials. (ECF No. 29-2 ¶ 22.) The plaintiff

---

[2] The plaintiff also received an employee handbook when he started working at the restaurant in 2017. (ECF No. 28 ¶ 7.)

claims that he never used the ADP portal to acknowledge or accept any policies, and that he does not know who used his account to acknowledge and accept them.  (*Id.* ¶¶ 22–28.)

## II.    Procedural History

The plaintiff brought this lawsuit against defendants Papa Johns International, Inc.; PJ National New York, LLC; and PJ Elhurst, Inc., under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  (ECF No. 1.)  The plaintiff's eight-page complaint alleges, largely upon information and belief, wage and hour violations; he claims that the defendants regularly required the plaintiff to work (i) without receiving minimum wages for all hours worked, (ii) without time allowed for meals, and (iii) for more than 40 hours per week without overtime compensation.  (*Id.* ¶¶ 17–22.)

On March 15, 2023, the defendant PJ National moved to compel arbitration and dismiss this action.  (ECF No. 25.)[3]  On January 23, 2024, the Court held an evidentiary hearing at which the plaintiff[4] and Hussain, the plaintiff's supervisor at Papa John's, testified.  (*See ECF Minute Entry dated Jan. 23, 2024.*)[5]

---

[3] The other defendants—PJ International and PJ Elhurst—did not join PJ National's motion to compel arbitration.

[4] After the evidentiary hearing, the defendant informed the Court by letter that the interpreter is a law clerk at the plaintiff's counsel's law firm.  (*See* ECF No. 42 at 5.)  The law clerk also did the English translation of the plaintiff's affidavit, which was submitted to the Court in connection with the plaintiff's response to the motion to compel arbitration.  (*Id.*)  The defendant asks the Court to "apply a negative inference upon Plaintiff's testimony for all material factual claims and other relief this Court deems necessary and just."  (*Id.*)  The plaintiff's counsel should have used a different interpreter or advised the Court and counsel that the firm's employee was doing the translations.  The defendant is not, however, asking the Court to strike the affidavit or the testimony.  *See Miranda v. Sweet Dixie Melon Co.*, No. 06-CV-92, 2009 WL 1324847, at *2 (M.D. Ga. May 13, 2009) (striking affidavit because the interpreter was "an employee of Plaintiffs' counsel," which "raises the concern that the interpreter had a motive to distort the translation in favor of Plaintiffs"); *see also Cruz v. Aramark Servs., Inc.*, 213 F. App'x 329, 334 (5th Cir. 2007) (affirming district court's order striking affidavit that was translated by plaintiff's attorney because the attorney had a potential motive to distort the translation).  In any event, the Court would reach the same decision on the motion to compel arbitration regardless of the translation issue.

[5] The Court credits Hussain's testimony, and portions of the plaintiff's testimony.

Hussain testified that the plaintiff's friend Khalil worked at Papa John's and recommended that Hussain hire the plaintiff, who used to work for Khalil.  (ECF No. 44 at 10–11.)  A few days later, the plaintiff came into the store to meet with Hussain; he did not have "any documents" with him so he came back the next day.  (*Id.* at 13.)  Their interaction was "very friendly."  (*Id.* at 19.)  The plaintiff was a "nice person," and they talked about their shared background growing up in Bangladesh.  (*Id.*)  Hussain gave the plaintiff documents to sign; the plaintiff did not have any questions about them and signed them.  (*Id.* at 18–19.)  Hussain said that he and the plaintiff spoke in a mix of English and Bangla.  (*Id.* at 19.)

The plaintiff testified that he learned about the Papa John's position from his friend and former employer Khalil.  (*Id.* at 29.)  The plaintiff worked for Khalil for about two years at Khalil's grocery store.  (*Id.* at 38.)  Before that, the plaintiff worked at a different store for three years.  (*Id.*)  The plaintiff testified that the statement in his affidavit that he "had never been employed before" was incorrect.  (*Id.* at 42–44.)

The plaintiff testified that Hussain was "friendly," and that overall it was a "friendly meeting."  (*Id.* at 41.)  He said that he told Hussain that he understands "very little English," and that Hussain told him this would "not be a problem" because the other employees "all speak Bangla."  (*Id.* at 31.)  When Hussain gave him forms to sign, the plaintiff told Hussain that he "[did] not know how to fill up this form" and that he didn't "understand everything that's written on here."  (*Id.* at 31–32, 36.)[6]  Hussain responded, "I'll take care of it."  (*Id.* at 32, 36.)  The handwriting on the Employee Acknowledgement was not the plaintiff's, and he did not know enough English to have written it.  (*Id.* at 36.)  He had "[a]bout half an hour" to read the

---

[6] The plaintiff testified that he started working in 2016, but the parties agree that he was hired in November 2017.

documents.  (*Id.*)  The plaintiff asked if he could take "them home and bring them back tomorrow;" Hussain responded, "No, it's okay, I'll take care of it, just sign."  (*Id.* at 47.)[7]

At one point during the plaintiff's employment, Papa John's switched to an application called ADP, which the plaintiff used to "check [his] weekly wages."  (*Id.* at 37.)  He "didn't know what else [he] could use this app for," and never used it to acknowledge any policies.  (*Id.*)  Majharul Meah, a store manager, helped the plaintiff "download the app, created [his] user ID and password . . . , told [him] what the password was, and handed [him] back [his] phone."  (*Id.*)  Other Papa John's employees had the plaintiff's username and password, but he did not know "why [they were] using [his] user ID and password to log in."  (*Id.*)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") covers arbitration provisions contained in employment contracts and arbitration agreements, including those here.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004).  The FAA provides that arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and establishes a "liberal federal policy favoring arbitration agreements," *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.").

---

[7] To the extent that the plaintiff's testimony contradicts Hussain's testimony, the Court credits Hussain's testimony because of the significant contradictions between the assertions in the plaintiff's affidavit and his testimony at the hearing.

A court considering whether all or part of an action should be submitted to arbitration under the FAA "must first decide whether the parties agreed to arbitrate." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). If a court concludes that the parties did so agree, it must then determine "(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.*

In making this determination, the court "draws all reasonable inferences in favor of the nonmoving party." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017). This standard is "similar to that applicable for a motion for summary judgment." *Id.* (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)).

## DISCUSSION

A court determining whether parties agreed to arbitrate applies state contract law. *Nicosia*, 834 F.3d at 231; *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019). Under New York law, which the parties agree governs the Employment Agreements, "the burden of proving that a valid arbitration agreement exists" is on "the party seeking arbitration." *Solis v. ZEP LLC*, No. 19-CV-4230, 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020) (citations omitted). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In support of its motion, the defendant submitted copies of the 2017 arbitration agreement. (ECF No. 28-2 at 9–11 (signed arbitration agreement).) The agreement bears the

plaintiff's signature, which is an objective manifestation of the plaintiff's assent to the contract's terms. (*Id.*); *Hong v. Belleville Dev. Grp., LLC*, No. 15-CV-5890, 2016 WL 4481071, at *3 (S.D.N.Y. Aug. 17, 2016) ("Their signatures on the Agreement thus demonstrate their assent to its terms, including the provision on arbitration.").

The plaintiff does not deny that he signed the arbitration agreement. (ECF No. 29-2 ¶¶ 12, 13.) He has, however taken different positions in this litigation about which agreements he disputes and why. In his opposition to the motion to compel, he did not challenge the validity of the arbitration agreement he signed in 2017; rather, he challenged only the 2018 and 2020 ADP portal acknowledgements. (*See* ECF No. 29.) The plaintiff argued that there was a "factual dispute over whether [he] was actually the person who read and acknowledged the Policies," and therefore this "fall[s] far short of the 'unequivocal acceptance of terms' required to impose an arbitration agreement." (*Id.* at 11.) In the opposition, the plaintiff maintains that only the 2018 and 2020 acknowledgements are operative—not the signed 2017 agreement—because on the ADP portal in 2018 and 2020, the first page of the documents stated that "[t]hese Policies supersede and replace all prior policies issued by the Company," and the arbitration agreement was part of that "single, 33-page PDF document" containing all of Papa John's employment policies. (*Id.* at 4, 11.) In other words, the plaintiff claims that the 2018 and 2020 agreements from the portal nullify the arbitration agreement that he admits to signing in 2017.

In this Circuit, a valid agreement to arbitrate can be superseded only by a "later-executed agreement" with a clause that "specifically precludes arbitration." *Jampol v. Blink Holdings, Inc.*, No. 20-CV-2760, 2020 WL 7774400, at *6 (S.D.N.Y. Dec. 30, 2020); *Goldman, Sachs & Co.* v. *Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014). The plaintiff does not argue that any such clause exists, nor could he, because the 2018 and 2020 agreements include

arbitration clauses. The 2018 and 2020 ADP acknowledgments therefore do not affect the validity of the 2017 agreement.

However, in his letter request for an evidentiary hearing, the plaintiff argued that the 2017 arbitration agreement was also invalid, and that there was no agreement to arbitrate because he did not understand enough English to know what he was signing. (*See* ECF 35 at 2.) He also claimed that he was "pressured" to sign the agreement. (*See id*.) As an initial matter, the plaintiff waived his challenge to the 2017 arbitration agreement, because he did not challenge the 2017 agreement in his opposition; in fact, he agreed that he signed it, and did not say anything about being pressured or not understanding what was in the agreement. *See Cole v. Blackwell Fuller Music Publ'g, LLC*, No. 16-CV-7014, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("[A] plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").

In any event, that challenge fails on the merits. The plaintiff cites *Solis v. ZEP LLC*, where the court denied a motion to compel arbitration because restaurant employees, who were not fluent in English, signed arbitration agreements under high-pressure circumstances in the restaurant's kitchen. 2020 WL 1439744, at *5. One plaintiff testified that he signed only a "blank page" that a chef handed him. *Id.* The "evidence show[ed] that the defendants exploited the close relationship between employer and employee as well as Solis's lack of English literacy to place Solis in a situation in which he would sign the arbitration agreement on the spot without a meaningful opportunity to have the agreement translated." *Id.* The court rejected the defendants' "post hoc boilerplate testimony" that "employees were always given the opportunity to take the agreements home with them before signing them" as "not credible." *Id.*

9

This case is entirely different.  In his affidavit,[8] the plaintiff asserted that Hussain was

"demanding" and that he made the plaintiff "very fearful" that he would not be hired if he did not

sign the papers.  (ECF No. 29-2 ¶¶ 12, 13.)  He also said that he "had never been employed

before, and [] very much wanted to be employed by the Franchise."  (*Id.* ¶ 13.)  The plaintiff's

testimony at the hearing contradicted many of the claims in the affidavit.  He testified that the

affidavit was incorrect, and that the Papa John's job was not his first job; he worked in two

grocery stores for a combined five years before he went to work for the defendant.  (ECF No. 44

at 38.)  He also testified that his friend Khalil told him about the Papa John's job (*id.* at 29), and

Hussain confirmed that Khalil recommended the plaintiff for the position (*id.* at 11–12).  Also

contrary to the affidavit, he described Hussain not as "demanding," but "friendly," and the

atmosphere in which he signed the 2017 arbitration agreement was "friendly."  (*Id.* at 41.)

Hussain testified credibly that the plaintiff did not have any questions about the documents he

signed.  (*Id.* at 18–19.)  Like the plaintiff, Hussain described the circumstances surrounding the

plaintiff's hiring as "friendly," that the plaintiff was a "nice person," and that the two men talked

about their lives in Bangladesh.  (*Id.*)  Moreover, the plaintiff and Hussain spoke in English and

Bangla.  (*Id.*)  In short, the hearing testimony established that the atmosphere in which the

plaintiff signed the arbitration agreement was nothing like the high-pressure circumstances

described in *Solis*.

That the plaintiff was not fluent in English does not change this result.  "New York courts

have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp

---

[8] The defendant argues that the Court should not consider the plaintiff's affidavit because the translated version is unsigned.  The Court need not "dwell[] on technical improprieties"—after all, the plaintiff's affidavit in Bangla is signed, and the Court's decision on the merits does not turn on the admissibility of this affidavit. *Heredia v. Americare, Inc.*, No. 17-CV-6219, 2020 WL 3961618, at *4 (S.D.N.Y. July 13, 2020).

of the English language will not relieve the employee of making a reasonable effort to have the document explained to him." *Ragone v. Atlantic Video*, 595 F.3d 115, 122 (2d Cir. 2010).  Even if the Court credited the plaintiff's testimony that he asked to take the documents home, the result would not change.  Under the circumstances, "[t]here was nothing preventing [the] plaintiff . . . from declining to sign the contract until [he] had an opportunity to read" a translation or to ask someone else to translate the contract.  *McCaddin v. Se. Marine Inc.*, 567 F. Supp. 2d 373, 383 (E.D.N.Y. 2008); *see also Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–63 (1930) ("Ordinarily, the signer of a deed or other instrument . . . is conclusively bound thereby. . . . If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.").

Accordingly, the plaintiff is bound by his 2017 agreement to arbitrate.  The action is stayed pending arbitration.  (ECF No. 25 at 18 n.7 (requesting a stay in the alternative); *see Ngo v. Oppenheimer & Co.*, No. 17-CV-1727, 2017 WL 5956772, at \*5 (S.D.N.Y. Nov. 30, 2017) ("[W]here a party has requested that the proceeding be stayed pending arbitration—whether in the alternative or otherwise—the Court must stay the action."); *Abdullayeva*, 928 F.3d at 226 n.5 ("[I]t is inappropriate for a court to dismiss an action after compelling arbitration where a stay has been requested by any party.").[9]

---

[9] The plaintiff does not dispute the other elements—that the scope of the agreement to arbitrate encompasses his claims and that Congress did not intent these claims to be non-arbitrable, *Zachman*, 49 F.4th at 101—so the Court deems them conceded.  And because the Court finds that the 2017 arbitration agreement was valid, the Court does not address the plaintiff's additional arguments about the 2018 and 2020 acknowledgements.

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is granted.  The action is

stayed pending the completion of arbitration, pursuant to Section 3 of the FAA.  9 U.S.C. § 3.

**SO ORDERED.**

s/Ann M. Donnelly

———————————————————

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       March 26, 2024